We arrive at our fifth case for the morning, Garcia v. Department of Homeland Security, appeal number 24-1887. And it looks like Mr. Mungo has arrived remotely. Mr. Mungo, can you hear us well? I can. Okay. And good morning, your honors. You may begin when you're ready. Okay, thank you very much. So, your honors, this case is a case in which the wrong standard was applied in dismissal of a race discrimination count in a three-count complaint, which contained a count of retaliation in hostile environment. The hostile environment was the only count that went to trial. And I know that you've read the briefs, and I just want to point out some facts that I think is significant because we did not reply to the appellee's response. And that would be, there is an assertion by both the court, the district court, as well as the defendants, that somehow we waived our argument and failed to address facts and legal arguments regarding certain events that took place that we believe constituted both discrete acts as well as acts that would fit in the category of the creation of a hostile environment. And that's simply not true. And I would just, for the record, reference the court to Docket 38, which is plaintiff's response to defendant's Rule 56.1 statement of undisputed facts and then plaintiff's additional facts. And also, Docket 39, which would be plaintiff's memorandum brief in response to the defendant's motion for summary judgment. And in those documents, and I can be even a little bit more specific in terms of some of the paragraphs, that some of these, well, I think just for purposes of defendant's Docket Number 39, Plaintiff's Exhibit 1, which we provide plaintiff's excerpts from plaintiff's deposition transcript, which itemizes and details a lot of the facts supporting the plaintiff's claims of discrimination based upon those acts. And the argument was that we didn't address it. And we obviously did. And therein, the cites to the record that I just gave you is evidence of that. And we would like the court to certainly take that under consideration. Other than that, fundamentally, the court, the district court, just used the wrong standards in light of Muldrell. And the defendants argue that there are three main categories upon which an adverse action can be established or must be established. And they limited plaintiff appellate to the second category, which states that there has to be some sort of transfer similar to- Mr. Mungo, I'm going to jump in here. Let's just assume that we, by your argument, that the evaluation scores do constitute some harm. Where is the record evidence that those scores were based on an impermissible animus? Well, it's the only evidence that we have is, of course, the copies of the evaluations are in the record. But plaintiff testified, I think, in great detail about his conversation with his supervisor who explained to him how he went about constructing and putting the performance evaluation together, which varied from the standards and the practices that were followed by the agency. And was there any record evidence that this particular supervisor used that method only for your client, or did he just do his own thing with everybody? Where is the comparator evidence? You necessarily don't need comparative evidence anymore under Ortiz, but I'm just looking for anything in the record that shows that these scores from this supervisor was based on national origin. Because I don't see it, frankly, Mr. Mungo. Well, it's not just that, Your Honor, but it's also the interference or the refusal to allow the appellant to secure career-enhancing assignments that would inure to the appellant being able to build a record that would justify getting higher scores. Now, the record shows that his scores were higher, but he never broke that threshold. And this is significant because that one point or .1 digit made the difference between him getting more money. And this was the practice. And the plaintiff testified that he was lied to by his supervisor about how to go about securing those opportunities. And then the very important point is that there's a direct relationship. The Snyder, who belittled using plaintiff's national heritage in the presence of three of his work colleagues, going on with the Hey, Vato. You've been, you know, you remind me of the movie where this Mexican was deported, et cetera, et cetera. They were close, his supervisor and this same other supervisor who engaged in this discriminatory conduct, and our close friends in their offices are right next door to each other. And there's this undercurrent here of a continuation of disparate, marginalized treatment coming from these two individuals. And really it blossomed on that one day, just before an international mission in which this person just ran my client into the ground. And even his associates that were there, the three others were there, they had to leave and put their head down. I mean, that's how, so that's how we relate. And of course. I'm sorry, I'd like to jump in before you get into your rebuttal time, but what event, it's just not clear from the briefing, what event forms the basis of the adverse employment action element of Garcia's discrimination claim? What event are you relying on? Absolutely. The discrimination claim that can be found in docket 43, page 12, where the district judge says, she lays out the basis of the discrimination claim. The plaintiff was deprived of an opportunity to receive greater financial compensation due to law, I'm sorry, due to low scoring on performance evaluations and prevented from opportunities for assignments that would help him to increase his score by serving as a mentor and other, and as a lead on different missions. So I just want to make sure that those are your, are those your two that you're asserting for purposes of appeal is the performance review scores as well as the mentoring, the lack of mentorship opportunities? Yes, Your Honor. As well, we're looking at, and the ABA today is meeting and they're covering all of the cases of Muldrow. Muldrow throughout the many, many more circuits, and we'd have a more recent one out of the Southern District of New York, I believe, the Anderson case. I'm sorry, I want to link up. Using those two, going back to Judge Maldonado's question, what is the harm that we're alleging was suffered as a result of the performance review scores, as well as the lack of mentorship opportunities? Is there a link between the two? So the link would be that both of those opportunities are tied to plaintiff appellant's ability to earn more money, to get, they get the... And so what evidence from the record, what evidence from the record, I know that's his argument, but what evidence from the record supports that, that if he had been given mentorship opportunities or if he had gotten higher scores on those performance reviews, that he would have resulted in higher pay? Well, that's built into those performance evaluations where, and there were also documents that indicated what if you performed at a certain level, this is what your bonus would be. So the score is tied to making the money. And that's why he always kept him just below that threshold where he could make more money. And this is important, obviously, as this is how these federal air marshals put their life on the line all the time, make their money. So, and they're living there. Mr. Mungo, you've used all of your rebuttal time, but we'll give you a minute when you return. Thank you. Thank you. We welcome Mr. Klaus to the podium, or Klaus. May it please the court, counsel. We pointed out numerous deficiencies in the plaintiff appellate's brief, undeveloped arguments, forfeited arguments, lack of citations. To reverse the district court, adopting arguments appellate did not develop, relying on evidence he does not cite and indeed does not have. Taking a look at the district court's decision on summary judgment. Can we just focus, pick up right where we left off on the two adverse employment actions, now that we've drilled down that there's two, the performance reviews, as well as the mentorship opportunities. What we've heard from counsel this morning is that those two opportunities limited his ability to get higher pay. Is there anything in the record that supports that argument? There is not, your honor. And at a preliminary level, starting with the mentorship opportunities. Yes. Those are among a sort of category of alleged adverse employment actions that occurred in the year 2020 and beyond. So, the incident itself occurred in 2018. The mentorship opportunity that he complained about was in September 2021. So, it's a matter of three years later, we argued at summary judgment that that claim had been forfeited, it had not been exhausted, and the district court agreed it had not been exhausted, and the plaintiff did not address our argument regarding exhaustion. So, the district court adopted our argument, not exhausted, and it was not raised in his appellate brief either. So, that can easily be dismissed, setting aside the fact that there's actually no record evidence other than Mr. Garcia's testimony that securing these mentorship opportunities would have had any effect on his pay. In terms of the performance reviews, the district court again articulated quite clearly why those do not, quote, count as adverse employment actions. And there were two reasons. The first is that the scores are objectively high. I mean, he was receiving good scores before the incident, he was receiving good scores after the incident. In fact, his scores have improved. He's doing a good job as a federal air marshal. There are instances, said the district court, in which a plaintiff could argue, yes, I had good scores, but they should have been higher. But you need evidence to support that. You need invisible evidence. And all Mr. Garcia offered was his own opinion testimony. And the court spelled out on, it's the short record on appeal at 27 and 28, what sorts of evidence Mr. Garcia could have marshaled but failed to do so. Documents or authoritative testimony regarding TSA evaluation policies, none. Documents or testimony regarding Mr. Gengler that was a supervisor, his evaluation matrix, none. Paperwork associated with Mr. Garcia's evaluations, none. Paperwork regarding evaluations of similar situated employees. He offered none of that, despite, in the court's words, its presumptive availability to Mr. Garcia during the discovery process. So, all he's left with is his own opinion, which is not uncommon among any employee, that his evaluation scores should have been higher. One more thing about the evaluation scores. When asked at this deposition which scores he thinks should have been higher, the answer was all of them. Every single one from two years before the incident to years after the incident. So, the gripe concerning evaluation scores has nothing to do with this event. It's his longstanding gripe that he should be getting higher scores than he has. If I could address, barring any further questions on those, if I could address Muldrow just for a moment. It was not clear in the brief whether or not Mr. Garcia was arguing that Muldrow affected the standard for proving a hostile work environment claim. To the extent he is arguing that, and again I'm still not clear, there has not been a single case since Muldrow that has held that the severe and pervasive requirement for showing a hostile work environment has changed. Severe or. Severe or, correct. And so, the district court in this case noted that this is not a pervasive work environment case. It's just not. There was an incident. There was a single incident and then there was a text message apologizing. And any other gripes or potential adverse employment actions that Mr. Garcia cited were either time barred or did not rise to the level of an adverse employment action. So, this is not a pervasive case. This is a severe case. And this court, the Seventh Circuit back in April, considering Muldrow in the Phillips versus Baxter case reiterated that to support a hostile work environment case, conduct must be objectionably offensive and severe or pervasive to be actionable. This is the precise claim that went to trial and the jury found that there was no hostile work environment. In terms of the pretrial rulings, which were the second issue raised in the appellant's brief, plainly there's no abuse of discretion here. The district court carefully spelled out its reasoning and not only was it not abuse of discretion, it was correct to exclude the evidence that we asked to be excluded. So, unless the court has further questions, we ask that you affirm both the district court's summary judgment rulings and its pretrial rulings. All right. Thank you, Mr. Klaus. Mr. Mungo, we'll give you one minute. Thank you, Judge. So, the docket 43, page 14, second paragraph spells out in detail the plaintiff's deposition testimony in which he explains and articulates what was his investigation into the method and the system of putting the performance evaluations together, as well docket 38 and docket 39 is just replete with references to transcripts and other documents that supports plaintiff's claims that counsel just indicated that we did not provide any evidentiary support for. Testimony is evidence and that because that count was dismissed and we believe it had a spillover effect on a no cause of our hostile environment claim by the jury. And on the issue of the claims allegedly that we waived, these incidents are incidents that we argued that grew out of the administrative charges. All of these, well, most of them, if not all of them, grew out of the administrative charges in Reynolds versus Tangrelini, 737-5-3-1093, 1099-1100, 7th Circuit, 2013, says if a claim satisfies this requirement that is like or reasonably related to the administrative charge, it's totally appropriate to add those. All right, Mr. Mungo. Mojo is being adopted by Mojo. Yes. You're at the end of the time. You may finish your thought. Okay. Just simply saying that Mojo makes no mistake or produces no doubt that that lesser standard grows out of the plain language of Title VII. And it is applicable to hostile environment claims as well. And we have a case of McNeil out of the 6th Circuit, which was decided in September of 2024, long after the case that counsel cited in the 7th Circuit there. And I believe that all the circuits are ultimately going to wind up on the same side of the bank as the 6th Circuit and a number of other circuits who have adopted and expanded the category of finding adverse actions, expanding that and lessening the burden on plaintiffs to prove adverse actions. Thank you, Mr. Mungo. We thank both parties and we will take the case under advisement.